IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RUSSELL D. McCULLOUGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 23 C 15991 |
| ) | |
| RICH L. RODRIGUEZ JR., VICTOR ) | |
| E. GOETZ, and CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Russell McCullough has sued the City of Chicago and Chicago police officers Rich Rodriguez and Victor Goetz under 42 U.S.C. § 1983 and state law. McCullough's claims arise from events, including his arrest, that took place on August 8, 2023. He asserts claims for (1) wrongful detention/false arrest in violation of the Fourth Amendment (count one); (2) unreasonable searches of his person and vehicle in violation of the Fourth Amendment (count two); (3) unreasonable seizure of his vehicle in violation of the Fourth Amendment (count three); (4) malicious prosecution in violation of the Fourth Amendment for initiating charges without probable cause (count four); (5) false imprisonment under Illinois common law (count five); and (6) malicious prosecution under Illinois common law (count six). McCullough has conceded that his state law malicious prosecution claim should be dismissed. *See* Pl.'s Resp. to Defs.' Mot. for Summ. J. at 2 n.1. The defendants have moved for summary judgment on all of McCullough's claims, arguing that Rodriguez and Goetz had probable cause to

arrest, detain, and initiate prosecution of McCullough, or alternatively (regarding the section 1983 claims) that the officers are entitled to qualified immunity. For the reasons described below, the Court denies the defendants' motion for summary judgment.

## Background

The following facts are undisputed except where otherwise noted. On August 1, 2023, McCullough was inside his vehicle in the driver's seat, stopped by the curb facing north with his hazard lights flashing, near the intersection of Wabash and Grand Avenues in Chicago, Illinois. A few feet behind McCullough's vehicle was a tow zone sign that indicated no parking in that area. Officers Rodriguez and Goetz, who were in a police vehicle, approached McCullough's vehicle and activated their emergency lights when they were a few feet behind it. They then exited their police vehicle. Goetz approached McCullough's vehicle from the driver's side and Rodriguez approached from the passenger side to conduct what the defendants contend was an investigative stop, believing that McCullough's vehicle was illegally parked in the no-parking zone.

Upon arriving at McCullough's vehicle, both officers shined their flashlights into the vehicle because it had tinted windows that limited visibility into the car. Goetz then gestured and asked McCullough to roll down the driver's side window, which he lowered partially. Goetz told McCullough he was parked in a tow zone, asked him again to lower the window, and then asked him to exit the vehicle as he (Goetz) could not see inside due to the tint. The officers continued to ask McCullough to step out of his vehicle; McCullogh asked in return why he was being asked to step out and explained that he was waiting for a curbside pick-up. Additional police officers arrived after a call went out from Rodriguez. Another officer, Theodoridis, joined Goetz and said that if McCullough

2

did not exit, he would smash the window with his ceramic flashlight.

McCullough then rolled his driver's side window all the way down. Theodoridis reached inside and unlocked and opened the driver's side door. Rodriguez approached the driver's side door and pulled McCullough out of the vehicle. The officers then searched the vehicle, handcuffed McCullough (who at this point was outside the vehicle), and asked him to produce his driver's license. McCullough replied that it was in his wallet, and Rodriguez asked where the wallet was. McCullough responded that it should be inside a bag that the officers had already searched. Rodriguez asked McCullough what his name was, and he provided his correct last name. Shortly after this, Rodriguez again asked McCullough where his wallet was. McCullough replied that if it was not in his bag, it might have fallen between the seats.

McCullough was taken to the 18th District police station, and his vehicle was towed and impounded. McCullough was charged with the following offenses: Municipal Code § 9-64-150(b): Parking Prohibited – Standing/Parking Posted; Municipal Code § 9-76-220(b): Vehicle Parked/Standing on Public Way w/Tinted Windows; 625 ILCS 5.0/11-203: Illinois Vehicle Code – Obedience to Police Officers; and 625 ILCS 5.06/6-112: Driver's License/Permit – Fail to Carry/Display. McCullough was released from custody the same day. He then went to the impound lot to retrieve his vehicle and says he found his driver's license between the seat and the center console, where he had told the police officers it might be. On or about November 3, 2023, the charges against McCullogh were dismissed after the officers failed to appear in court.

## Discussion

A party is entitled to summary judgment "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court is required to view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court cannot make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; that is the role of the finder of fact. *See, e.g., Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). When the evidence in its entirety would not lead a rational trier of fact to find for the nonmoving party, then there is no genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The defendants' pitch for dismissal, as outlined in their opening brief,[1] is that "Plaintiff was stopped for being illegally parked, he was arrested for failing to follow lawful orders given by police and failing to produce identification, and he was charged for these offenses." Defs.' Mot. to Dismiss at 1. More specifically, the defendants contend that the police had probable cause to arrest McCullough for parking in a tow zone; for having a vehicle with illegally tinted windows; for refusing to lower his window when instructed; and for failing to produce his driver's license or a form of identification. *See id.* at 5-6. The defendants contend that the search of McCullough's person and his vehicle were legal searches incident to his arrest, *id.* at 7, 8, and that the search of the

---

[1] The defendants filed a motion to dismiss for failure to state a claim in which they relied on material outside the complaint. The Court converted the motion to a motion for summary judgment and allowed both sides to make supplemental submissions following the conversion. *See* Fed. R. Civ. P. 12(d).

vehicle was likewise justified as an inventory search prior to its impoundment, *id.* at 8. Finally, the defendants argue that the seizure and impoundment of McCullough's vehicle was an authorized removal of an unattended vehicle parked illegally in a marked tow zone, and because McCullough had been operating it without carrying a valid driver's license. *Id.* at 10, 11. The defendants contend that McCullough's malicious prosecution and false imprisonment claims fail for the same reasons his false arrest claim fails, specifically the existence of probable cause. *Id.* at 12-13, 14. The defendants also argue that they are entitled to qualified immunity on McCullough's federal claims. *Id.* at 14-15.

A. Fourth Amendment claims

McCullough contends the officers violated his Fourth Amendment rights by arresting him, searching him and his vehicle, seizing his vehicle, and prosecuting him without probable cause. Each of these claims requires McCullough to establish the absence of probable cause as of the relevant point in time. *Brooks v. City of Chicago*, 564 F.3d 830, 832 (7th Cir. 2009), *Thompson v. Clark*, 142 S. Ct. 1332, 1337-38 (2022), See *Askew v. City of Chicago*, 440 F.3d 894, 895 (7th Cir. 2006).

The Court begins with the officers' arrest of McCullough. "Police officers have probable cause to arrest an individual when 'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed' an offense." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (quoting *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998)). A court evaluates probable cause "not on the facts as an omniscient observer would perceive them," but "as they would have appeared to

a reasonable person in the position of the arresting officer." *Id.* (quoting *Kelley*, 149 F.3d at 646). The existence of probable cause is typically a question of fact for the jury, but summary judgment is appropriate if "there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 473 (7th Cir. 1997).

      The Court concludes that there are genuine disputes of material fact that preclude summary judgment. The evidence would allow a reasonable jury to find that the officers lacked probable cause to believe that McCullough had committed an offense, making the arrest and subsequent actions unlawful.

      The officers initially contend that there was a proper "investigatory stop" when they first approached McCullough's vehicle, in other words before they arrested him. That's a bit difficult to swallow. A Fourth Amendment encounter occurs when an individual's freedom of movement is restricted by the actions of law enforcement. If the person's movement is restricted by some other factor, there is no Fourth Amendment seizure, *see, e.g., Florida v. Bostick*, 501 U.S. 429, 436 (1991), and the same is true when the police approach a person in a public place and do not impose what a reasonable person would consider a restriction of his movement, *see INS v. Delgado*, 466 U.S. 210, 215-16 (1984). Here all that happened was that the officers approached McCullough's vehicle, which was already stopped. A reasonable jury could find the initial encounter did not implicate the Fourth Amendment at all.

      In any event, even if the officers' initial approach to McCullough's vehicle might be considered a Fourth Amendment "stop" justified by the belief that the stopped vehicle was unoccupied and thus illegally parked, that would not, without more, justify the

6

actions that followed and that are at the core of McCullough's claims. specifically, his arrest, the subsequent seizure of his vehicle, and his prosecution. With regard to the arrest, a reasonable jury could find based on the evidence that the officers were aware, once they were adjacent to the vehicle, that a person was inside. From this, a reasonable jury could conclude that there was no longer a basis for an investigatory stop, let alone an arrest. The continuation of even a lawful arrest—or here, perhaps, a lawful investigatory stop—violates the Fourth Amendment "when the police discover additional facts dissipating their earlier probable cause." *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 479 (7th Cir. 2011).

The claimed initial basis for the officers' encounter with McCullough and his vehicle and his subsequent arrest was a violation of section 9-64-150(b) of the Municipal Code of Chicago, which states, "It shall be unlawful to stand or park any vehicle in violation of any sign erected or maintained pursuant to this subsection." The Code defines parking as "the standing of an *unoccupied* vehicle otherwise than temporarily for the purpose of and while actually engaged in loading or unloading property or passengers." Chi. Mun. Code § 9-4-10 (emphasis added). The Code defines standing as "the halting of a vehicle, whether occupied or not, otherwise than temporarily for the purpose of and while actually engaged in receiving or discharging passengers; provided, that, an operator is either in the vehicle or in the immediate vicinity, so as to be capable of immediately moving the vehicle at the direction of a police officer or traffic control aide." *Id.*

The evidence indicates that McCullough was not "park[ed]," as he was in his vehicle—which a reasonable jury could find the officers knew once they were standing

adjacent to the vehicle. Instead, at most McCullough and his vehicle were "standing," as the Municipal Code defines that term. And it is clear—and it would have been readily apparent to the officers on the scene—that the sign adjacent to where McCullough was waiting in his car prohibited only parking, not standing. *See* Pl.'s Ex. 2 (picture of the sign); *compare* Pl.'s Ex. 4 (example of a sign indicating both "No Parking" and "No Standing"). If McCullough was "standing"—as the facts known to the officers reflected as of the moment of his arrest—then he was not violating the law by waiting at curbside. As such, a reasonable jury could find that probable cause to believe McCullough was in violation of section 9-64-150(b) was lacking at the time of his arrest.

      The defendants contend that a prudent person in the officers' position would, upon seeing a stationary vehicle next to a "No Parking" sign, be warranted in believing that a violation had occurred. They argue that this contention is supported by the heavy tinting on the windows of McCullough's vehicle, which would have made it difficult to determine whether the vehicle was occupied. thus giving rise to a reasonable belief that the car was unoccupied and thus parked. But a reasonable jury could find that this would have justified only the officers' *initial approach* to the vehicle. Once they were next to McCullough's vehicle, the officers shined their flashlights into his windows and likely were able to see that it was occupied—as shown by the fact that Officer Goetz gestured to McCullough to roll his window down. This is evidence that a reasonable jury could find defeats any contention a reasonable officer had probable cause to believe the vehicle was parked and not simply standing—which, in that particular zone, was not illegal. In sum, a reasonable jury could find that probable cause was lacking to take any action—including detention of McCullough—based on a claimed violation of

8

section 9-64-150(b).

In their reply brief, the defendants argue that the arrest and charging of McCullough under section 9-64-150(b) was justified based on a reading of the law that—they appear to contend—precluded *both* parking and standing even though the posted sign said only that *parking* was prohibited. This argument is based on a tortured reading of the final sentence of the ordinance, which (as quoted earlier) states that "it shall be unlawful to *stand or park* any vehicle in violation of any sign erected or maintained pursuant to this subsection." Chi. Mun. Code § 9-64-150(b) (emphasis added). The defendants seem to contend that the "or" in the phrase "stand or park" means that *either* is illegal, irrespective of what the posted sign says. *See* Def.'s Reply in Support of Mot. for Summ. J. at 2-3. This reading rips the cited three words out of their context: the ordinance prohibits standing or parking *in violation of any sign* and thus ties the violation to what the sign says. Here the posted sign prohibited only parking, not standing.

If the defendants are contending that they made a reasonable mistake of law and that the arrest and charging of McCullough was justified as a result, *see Heien v. North Carolina*, 574 U.S. 54, 60 (2014)—and it's not apparent that's what they are contending—that argument does not carry the day on the present motion. First of all, a reasonable mistake of law justifies a seizure only if the provision relied upon is ambiguous, *see, e.g., United States v. Phillips*, 430 F. Supp. 3d 463, 474 (N.D. Ill. 2020) (Chang, J.), and this one isn't, at least not in the way the defendants seem to suggest. *See also United States v. Stanbridge*, 813 F.3d 1032, 1037 (7th Cir. 2016) (a law enforcement officer does not "act[s] in an objectively reasonable manner by

9

misinterpreting an *unambiguous* statute."). And second, there is no basis on the current record to suggest that this is what the defendants actually believed or understood at the time. The defendants cite no case supporting the proposition that the theoretical possibility that an officer *might* make a reasonable mistake of law can justify an otherwise unlawful arrest. The defendants are not entitled to summary judgment on this basis.

The second possible basis for the officers' actions was the claimed tinted window violations, said to be a violation of Chicago Municipal Code § 9-76-22(b). But this ordinance had been repealed in November 2022, over nine months before the officers' encounter with McCullough. In other words, it was not the law at the time of his arrest. Thus it cannot be used to justify the arrest. (After McCullough pointed this out in his response, the defendants did not continue to rely on this provision in their reply.)

The third provision under which McCullough was charged was 625 ILCS 5/11-203, which states, "No person shall willfully fail or refuse to comply with any lawful order or direction of any police officer, fireman, person authorized by a local authority to direct traffic, or school crossing guard invested by law with authority to direct, control, or regulate traffic." The defendants contend that officers told McCullough that he was committing a traffic violation and began giving him what they contend were lawful orders and that his failure to obey those orders justified his arrest and the officers' subsequent actions. But when an officer approaches an individual without reasonable suspicion or probable cause, the individual has the right to ignore the officer. *Florida v. Royer*, 460 U.S. 491, 498 (1983). Further, any refusal to cooperate on its own does not give rise to the minimal level of objective justification needed for a detention or seizure. *Florida v.*

10

*Bostick*, 501 U.S. 429, 437 (1991). A reasonable jury could find that the officers had no legitimate basis to order McCullough out of his car at the point in time they gave that command. For these reasons, a genuine dispute exists over whether the officers had a reasonable basis to believe that McCullough had violated *lawful* orders. Specifically, a reasonable jury could find that there was no basis to stop or detain McCullough once the officers became aware—as they were almost immediately—that his vehicle was occupied, that he was "stopped" and not parked, and thus that the officers' orders to exit the vehicle were unlawful, meaning that his noncompliance did not trigger application of section 11-203.

Finally, the defendants contend McCullough violated 625 ILCS 5/6-112 by failing to display his driver's license to the officers. Section 6-112 states that "[e]very licensee or permittee shall have his driver's license or permit in his immediate possession at all times when operating a motor vehicle and, for the purpose of indicating compliance with this requirement, shall display such license or permit if it is in his possession upon demand made, when in uniform or displaying a badge or other sign of authority, by . . . a . . . police officer . . . ." 625 ILCS 5/6-112. It appears relatively clear that McCullough did not have his driver's license *on his person*, and it is also clear that when the officers asked him to produce it, he could not. But the officers did not ask McCullough for his license while he was still in the vehicle; it was after they had pulled him out. At that point, McCullough was no longer "operating a motor vehicle" and thus was not required by section 6-112 to have his license "in his immediate possession." Rather, he told the officers it was still in the vehicle—where he had been sitting just before. So long as McCullough had the license in his immediate possession *before* he was pulled out of

11

the vehicle, he did not run afoul of section 6-112's possession requirement. And a reasonable jury could find he did; there is evidence that the license was later found next to the driver's seat of the vehicle. Thus a reasonable jury could determine that there was no probable cause to arrest or charge McCullough for this offense as well.

In sum, there are a genuine factual disputes that prelude a determination as a matter of law that McCullough cannot establish probable cause to arrest or the absence of a basis for the challenged searches and seizures. And because the defendants' arguments concerning the remaining challenged actions hinge on the legality of the arrest, see Defs.' Reply in Support of Mot. to Dismiss at 7 (search of person), 8 (search of vehicle and impoundment), 10 (impoundment), summary judgment is inappropriate on those claims for the same reasons already discussed.[2]

**B.  Qualified immunity**

Rodriguez and Goetz contend in the alternative that they are entitled to qualified immunity on McCullough's federal constitutional claims against them. Qualified immunity shields a government official from liability for civil damages if his actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (2009). To defeat a defense of qualified immunity the plaintiff must show "(1) that a trier of fact could conclude that the officer violated a federal right, and (2) that the unlawfulness of the

---

[2] The defendants appear to contend that the vehicle seizure and impoundment were independently lawful because once McCullough had left the scene, the vehicle was, in fact, improperly parked. This seems to the Court like a Catch-22 argument: the defendants appear to be contending that they could declare his car unlawfully parked by first illegally dragging him out of it. The defendants offer no support for this seemingly preposterous proposition, and the Court therefore overrules it.

12

conduct was clearly established at the time the officer acted." *Estate of Davis v. Ortiz*, 987 F.3d 635, 639 (7th Cir. 2021). On a false arrest claim, a defendant is entitled to qualified immunity if there is "arguable probable cause." *See, e.g., Fleming v. Livingston County*, 674 F.3d 874, 880 (7th Cir. 2012). Arguable probable cause exists when a reasonable police officer with the same knowledge in the same circumstances as the officer in question could have mistakenly believed that probable cause existed. *Id.*

In this case, there are key facts that are genuinely disputed, including the officers' awareness near the outset of their encounter with McCullough that the vehicle was occupied, the circumstances surrounding the lawfulness of the officers' orders to McCullough, and whether his license was in his immediate possession at the relevant time. These genuine factual disputes preclude summary judgment on qualified immunity just as they do on the merits of McCullough's claims. *See Estate of Williams v. Cline*, 902 F.3d 643, 648-49 (7th Cir. 2018) (on summary judgment, when the facts are in dispute, the qualified immunity inquiry requires "accepting the facts and inferences in the light most favorable to the plaintiff").

**C.     False imprisonment**

McCullough's final claim is a state law false imprisonment claim. The elements for false imprisonment under Illinois law are: (1) the plaintiff was restrained or arrested by the defendant; and (2) the defendant acted without reasonable grounds to believe that the plaintiff committed an offense. *Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907, ¶¶ 61, 983 N.E.2d 993, 1007. "Reasonable grounds" is roughly the same as probable cause, and thus "probable cause is an absolute bar to a claim of false

imprisonment." *Id.* ¶ 63, 983 N.E.2d at 1007. For the reasons described above, there are genuine factual disputes regarding the existence of probable cause, and a reasonable jury could find in McCullough's favor regarding the absence of probable cause on each of the charges for which he was arrested and detained. The defendants are therefore not entitled to summary judgment.

## Conclusion

For the reasons stated above, the Court denies the defendants' motion for summary judgment. Count six (state law malicious prosecution) is voluntarily dismissed. A telephonic status hearing is set for August 20, 2024 at 8:55 a.m. to set a pretrial and discovery schedule and to discuss the possibility of settlement. The following call-in number will be used: 650-479-3207, access code 980-394-33. The parties are to confer regarding a schedule and are to file a joint status report with a proposed schedule on August 16, 2024.

Date: August 13, 2024

                                                                   _____
                                                                   MATTHEW F. KENNELLY
                                                                   United States District Judge