**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RUSSELL D. MCCULLOUGH, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 23-cv-15991 |
| CITY OF CHICAGO, RICH L. RODRIGUEZ JR., and VICTOR E. GOETZ | ) ) ) ) | District Judge Matthew F. Kennelly Magistrate Judge M. David Weisman |
| Defendants. | ) ) | |

**DEFENDANT CITY OF CHICAGO'S MOTION TO STRIKE
PLAINTIFF'S CLASS ALLEGATIONS IN AMENDED COMPLAINT**

NOW COMES Defendant City of Chicago ("City"), by and through one of its attorneys, Matthew H. Bunn, Assistant Corporation Counsel for the City of Chicago, and for its Motion to Strike Plaintiff's Class Allegations in Amended Complaint, states as follows:

**INTRODUCTION**

This case is about Plaintiff getting arrested while he was inside his vehicle next to a curb in a no-parking zone while waiting for a curbside pick-up. Because Plaintiff's vehicle's windows were tinted and because Plaintiff was not readily cooperative, the police officers conducting the investigatory stop of Plaintiff's vehicle removed Plaintiff from the vehicle. Plaintiff was charged with four offenses related to vehicle parking, tinted vehicle windows, failure to display a driver's license, and failure to comply with police officer orders.

Now, Plaintiff seeks to expand this very specific case from a single plaintiff claiming violations of his constitutional rights by police officers from a single traffic stop into a broad, class action case. Plaintiff seeks to define the class as persons who faced one of the same charges that Plaintiff faced: unlawfully parking in a no-parking zone. But Plaintiff also faced three additional

1

charges. And Plaintiff also alleges a slew of law enforcement actions taken against him that have nothing to do with the charge of unlawfully parking in a no-parking zone. For the reasons argued in this motion to strike, this Court should find Plaintiff's class action allegations demonstrate, on their face, that allowing this case to proceed as a putative class action would be futile. This Court should therefore strike Plaintiff's class action allegations from his complaint.

## BACKGROUND

On October 18, 2024, Plaintiff filed his Amended Complaint ("AC"). Doc. 46. The AC concerns a traffic stop of Plaintiff on August 21, 2023, by Defendants Rich L. Rodriguez Jr. and Victor E. Goetz ("Officers"), who are police officers for the Chicago Police Department ("CPD"), *id.* at ¶ 4, that predominately involved the question of whether Plaintiff was lawfully stopped or standing in his vehicle, as opposed to being unlawfully parked, in a no-parking zone. *Id.* at ¶¶ 6–10. Based on this traffic stop, Plaintiff alleges the Officers caused Plaintiff to be charged with four violations of the law, including under the Municipal Code of Chicago ("MCC"), with no just cause. *Id.* at ¶¶ 30–31. Plaintiff further alleges he was released from custody later the same day as the traffic stop, and all four charges against Plaintiff were dismissed on November 3, 2023. *Id.* at ¶¶ 32–33. Based on the traffic stop and subsequent charges, Plaintiff brings claims against the Officers under 42 U.S.C. § 1983 and under Illinois state law based on the Officers having "conducted a stop, search, arrest, and/or prosecution of Plaintiff and/or his vehicle without just cause." *Id.* at ¶ 45; *id.* at p. 6 (Count I).

Apart from Plaintiff's own experience with the Officers and the claims pled against the Officers in Count I of the AC, Plaintiff also pleads in Count II of the AC a class action claim that asserts federal constitutional violations by the City itself under the Fourth Amendment to the United States Constitution under *Monell v. Department of Social Services of City of New York*,

2

436 U.S. 658 (1978) ("*Monell*"). *Id.* at pp. 6–7 (Count II). Plaintiff thus "brings this lawsuit individually and on behalf of all others similarly situated." *Id.* at ¶ 3. Plaintiff alleges his experience with the Officers "is not isolated"; rather, "Chicago police officers consistently treat vehicles that are merely stopped or standing in no-parking zones as if they were unlawfully parked," and "[t]hey do this because the Chicago Police Department has a widespread custom of inadequately training its officers on the distinctions between stopping, standing, and parking" in accordance with the MCC. *Id.* at ¶¶ 34–35.

With respect to a proposed class, Plaintiff alleges the following: "This widespread custom has directly impacted a class of individuals who were subjected to an investigatory stop, search, arrest, and/or citation for parking in a no-parking zone, even though their vehicles were merely stopped or standing." *Id.* at ¶ 39. In other words, Plaintiff defines the proposed class as follows: "Each member of the class was unlawfully stopped, searched, arrested, and/or prosecuted for parking in no-parking zones, despite their vehicles being merely stopped or standing." *Id.* at ¶ 53. In sum, Plaintiff alleges "[t]he City deprived each member of the class of their right secured to each of them by the Fourth Amendment to the Constitution of the United States," and "[t]he City's widespread custom was the direct cause of each member's constitutional deprivation." *Id.* at ¶¶ 51, 55. Plaintiff's *Monell* claim in Count II is brought on behalf of each member of the class. *Id.* at pp. 6–7 (Count II).

## LEGAL STANDARD

The Seventh Circuit describes the requirements for bringing a class action as follows:

> Rule 23 governs class actions. A party seeking class certification must demonstrate first that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

3

> Once it satisfies Rule 23(a), a party seeking certification can proceed along one of several paths. Perhaps the most familiar is the certification of a class with respect to a claim under Rule 23(b). And, where the claim asks for damages, a party seeking certification can invoke Rule 23(b)(3), which allows certification where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

*Jacks v. DirectSat USA, LLC*, 118 F.4th 888, 896 (7th Cir. 2024).

"Rule 23(c)(1)(A) says that a federal district court should rule at 'an early practicable time after a person sues or is sued as a class representative ... whether to certify the action as a class action.'" *Jones v. BRG Sports, Inc.*, No. 18 C 7250, 2019 WL 3554374, at *3 (N.D. Ill. Aug. 1, 2019) (Kennelly, J.) (citing Fed. R. Civ. P. 23(c)(1)(A)). "Consistent with this language, a court may deny class certification even before the plaintiff files a motion requesting certification." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) (cleaned up). "This is because a court has an independent obligation to decide whether an action brought on a class basis is to be so maintained even if neither of the parties moves for a ruling under subdivision (c)(1)" and "need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination." *Id.* (cleaned up).

"Although Federal Rule of Civil Procedure 12(f) traditionally governs motions to strike in civil litigation, '[c]ourts in this District [ ] evaluate motions to strike class allegations under Rule 23.'" *Gibson v. Albertsons Cos., Inc.*, No. 22 CV 642, 2024 WL 4514041, at *1 (N.D. Ill. Oct. 17, 2024) (quoting *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014) (St. Eve, J.)). In *Jones*, this Honorable Court considered district courts' differing views on the proper use of motions to strike class allegations at the pleading stage in the absence of Seventh Circuit

4

authority on the issue. 2019 WL 3554374, at *3 & n.2.[1] This Honorable Court ruled it would "consider the motion to strike on its merits bearing in mind that the plaintiffs have not yet been allowed to conduct any discovery." *Id.* at *3. Moreover, in deciding the scope of the analysis on a motion to strike class allegations, this Honorable Court ruled "the motion to strike analysis should—at least where the motion is filed at this early a stage of the litigation—be limited to the face of the pleadings and documents incorporated by inclusion or reference, as would be appropriate for an analogous motion to dismiss under Rule 12(b)(6)." *Id.* at *3–4 (cleaned up). As such, this Honorable Court ruled it would take the allegations in the complaint as true for the purposes of the motion to strike, akin to Rule 12(b)(6) standards. *Id.* at *4. Finally, this Honorable Court ruled that, in sum, it would grant a motion to strike class allegations "only if it concludes that this is an exceptional case where it is clear from the complaint that circumstances warrant a motion to strike class allegations to conserve court and party resources and where the pleadings make clear that the suit cannot satisfy Rule 23." *Id.* (cleaned up).

## ARGUMENT

For the reasons described below, this Court should hold this is an exceptional case where it is clear from Plaintiff's AC that Plaintiff's class action allegations in Count II cannot satisfy the requirements in Rule 23(a)(3) or (b)(3).

### I. Plaintiff's Class Allegations Cannot Satisfy Rule 23(a)(3) – Typicality.

Rule 23(a)(3) requires a plaintiff to establish "the claims … of the representative parties are typical of the claims … of the class[.]" Fed. R. Civ. P. 23(a)(3). The Seventh Circuit has explained Rule 23(a)(3) "may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members; it primarily directs the district court to

---

[1] The City is unaware of any Seventh Circuit authority on this issue handed down since this Honorable Court decided *Jones*.

focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Scott v. Dart*, 99 F.4th 1076, 1091–92 (7th Cir. 2024) (cleaned up). In other words, "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Howard v. Cook Cnty. Sheriff's Office*, 989 F.3d 587, 605 (7th Cir. 2021) (cleaned up). Thus, "typicality is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large," and "it is not enough for typicality that the named plaintiffs and the class members rely on the same legal theory." *Id.* at 605–06 (cleaned up). Here, Plaintiff's class allegations fail to show both that Plaintiff's claims are based on the same legal theory as and have the same essential characteristics of the claims of the other class members.

First, Plaintiff's class allegations fail to satisfy Rule 23(a)(3) because Plaintiff cannot show his "claims are based on the same legal theory" as the claims of the other class members. *Id.* at 605 (cleaned up). Plaintiff's claims with respect to himself are based on Plaintiff allegedly lawfully standing, and not unlawfully parking, under Section 9-64-150(b) of the MCC. Doc. 46 at ¶¶ 6–10, 30–31; *id.* at p. 6 (Count I). Section 9-64-150(b) of the MCC provides as follows:

> The commissioner of transportation is authorized to determine places in which the standing or parking of vehicles would create an especially hazardous condition or would cause unusual delay to traffic and those streets or parts of streets upon which parking shall be prohibited, and to erect and maintain appropriate signs giving notice that standing or parking is prohibited. It shall be unlawful to stand or park any vehicle in violation of any sign erected or maintained pursuant to this subsection.[2]

---

[2] The MCC is publicly available at this website: MUNICIPAL CODE OF CHICAGO (last visited Dec. 9, 2024). This Court may take judicial notice of Section 9-64-150(b) of the MCC in ruling on the City's motion to strike. *See Wyrick v. City of Chi.*, No. 99 C 4777, 2001 WL 293082, at *2 n.3 (N.D. Ill. Mar. 26, 2001) (ruling the district court would consider the MCC in ruling on a Rule 12(b)(6) motion to dismiss because "[i]n *Toney v. Burris,* 829 F.2d 622, 626–27 (7th Cir.1987), the court held that federal courts may take judicial notice of city ordinances.").

Section 9-64-150(b) of the MCC plainly does not mention anything about an investigatory stop of a driver, commanding a driver to exit their vehicle, searching a driver's person, searching a driver's car, arresting a driver, issuing a citation to a driver, or initiating a criminal prosecution of a driver in the Circuit Court of Cook County, Illinois. Yet Plaintiff's claims in Count I of the AC are based on precisely these legal theories of what the Officers allegedly did to him. *See* Doc. 46 at ¶¶ 12–31, *id.* at p. 6 (Count I). Moreover, Section 9-64-230 of the MCC—titled "Standing or parking violations punishable by fine" and that is within the same Chapter 9-64 "Parking Regulations" as Section 9-64-150(b)—provides "[t]he violation of any provision of the traffic code prohibiting or restricting vehicular standing or parking shall be a civil offense punishable by fine, and no criminal penalty, or civil sanction other than that prescribed in this Code, shall be imposed."[3]

      Therefore, Plaintiff's claims with respect to himself are based on a legal theory that involves alleged violations of Plaintiff's rights under the Fourth Amendment to the United States Constitution, including an investigatory stop, a search, an arrest, and a prosecution without just cause. Doc. 46 at p. 6 (Count I). As this Court explained in its Memorandum Opinion and Order denying Defendants' initial, converted motion for summary judgment, "McCullough contends the officers violated his Fourth Amendment rights by arresting him, searching him and his vehicle, seizing his vehicle, and prosecuting him without probable cause," and "[e]ach of these claims requires McCullough to establish the absence of probable cause as of the relevant point in time." Doc. 32 at 5 (citations omitted). But the claims of the other class members are not, on their face, based on a legal theory that involves the same alleged violations of the class members' rights under the Fourth Amendment as happened to Plaintiff. Rather, the claims of the other class members are solely based on a legal theory that involves fines resulting from alleged violations of Section 9-

---

[3] Specifically, Section 9-100-020(b) of the MCC provides a fine of $75.00 "shall be imposed for a violation of" Section 9-64-150(b) of the MCC.

64-150(b) of the MCC. Even if probable cause is needed to impose a fine on each class member under Section 9-64-150(b) of the MCC, Plaintiff fails to plausibly allege anything apart from conclusions that the class members also faced the other Fourth Amendment violations that Plaintiff faced. Consequently, Plaintiff's allegations that the claims of the other class members are based on the same legal theories under the Fourth Amendment as Plaintiff's case, including an investigatory stop, a search, an arrest, and a prosecution without just cause, *id.* at ¶¶ 39, 53, are legal conclusions that are not entitled to the presumption of truth. *See Brockett v. Effingham Cnty., Ill.*, 116 F.4th 680, 685 (7th Cir. 2024) ("Allegations that state 'legal conclusions' or '[t]hreadbare recitals of the elements of a cause of action' are not entitled to the assumption of truth.") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Weinberg v. City of Chi.*, 310 F.3d 1029, 1035 (7th Cir. 2002) ("We will construe the municipality's law [the MCC] under state law. Illinois law states that where clear and unambiguous, statutory language must be enforced as enacted, and a court may not depart from its plain language by reading into it exceptions or limitations.") (cleaned up).

Second, Plaintiff's class allegations fail to satisfy Rule 23(a)(3) because Plaintiff cannot show his claims "have the same essential characteristics as the claims of the class at large." *Scott*, 99 F.4th at 1092 (cleaned up). Plaintiff's claims do not "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members[.]" *Howard*, 989 F.3d at 605 (cleaned up). According to Plaintiff, "the essential characteristics that knit the proposed class members together," *Scott*, 99 F.4th at 1092 (cleaned up), are the class members being accused of, treated as, or cited for violating Section 9-64-150(b) of the MCC by the CPD. Doc. 46 at ¶¶ 34–35, 39, 53. Specifically, Plaintiff alleges his claims and the claims of the other class members arise from the same practice or course of conduct of "Chicago police officers consistently treat[ing] vehicles that are merely stopped or standing in no-parking zones as if they were unlawfully

8

parked." *Id.* at ¶ 34. This allegation alone is not enough to demonstrate typicality. *See McFields v. Dart*, 982 F.3d 511, 518 (7th Cir. 2020) ("McFields asserts that his claim is based on the same course of conduct that affected all members of the class. But that does not mean that his claim has the same essential characteristics as the claims of the class at large, which is what the requirement is meant to ensure.") (cleaned up). Instead, Plaintiff's class allegations must demonstrate any differences between Plaintiff's situation and the other class members' situations are "the mere factual distinctions that arise in most any case," rather than "overwhelming factual distinctions that defeat any essential characteristics across the claims." *Id.* (cleaned up).

Here, Plaintiff's claims are very fact specific to Plaintiff's individual situation as to why the Officers initiated any interaction with Plaintiff, what steps the Officers took under the circumstances, and with what charges the Officers ultimately charged Plaintiff. Plaintiff's tinted windows undoubtedly came into play in determining why the Officer's even initiated any interaction with Plaintiff in the first place. *See* Doc. 46 at ¶ 8 (describing how the Officers "approached Plaintiff's vehicle" and incorrectly claimed his vehicle "had window tint in violation of MCC 9-76-220(b) (Tinted Side Windows)."). And to the extent this Court suggested during the October 18, 2024, telephonic status hearing that the Court could consider matters outside the complaint on a motion to strike class allegations, the City refers to the Officers' body-worn camera videos from their interaction with Plaintiff that were previously filed and submitted as Exhibits A and B to Defendants' Motion to Dismiss. Doc. 12 at 2.[4] As Defendants have argued in this case, Plaintiff was driving a vehicle with tinted windows that limited the Officers' visibility into Plaintiff's vehicle and exacerbated the issues with Plaintiff's lack of cooperation with the Officers in lowering his window after being requested to do so. *Id.* at 2, 5.

---

[4] If necessary, the City can resubmit copies of the body-worn camera videos to the Court.

9

Moreover, although Plaintiff only expressly mentions in the AC two of the four separate charges he faced, including two charges under the MCC, *id.* at ¶ 30, the Certified Statements of Dispositions for Plaintiff's four charges show Plaintiff was also charged with violating two provisions of the Illinois Vehicle Code—625 ILCS 5/6-112 (failure to display a driver's license)and 625 ILCS 5/11-203 (failure to comply with police officer orders)—that have nothing to do with a vehicle standing versus parking. *See* Doc. 42-1 at pp. 6–9.[5] But in the AC, Plaintiff does not allege the class members were also charged with window tint violations under the MCC or with any violations under the Illinois Vehicle Code. Nor, as explained above, does Plaintiff plausibly allege that the other class members, when faced with violations of Section 9-64-150(b) of the MCC, suffered Fourth Amendment violations in the form of an investigatory stop, a search, an arrest, and a prosecution without just cause. Nor is it plausible to believe, without supporting factual allegations, that the other class members experienced the same set of law enforcement actions taken against them as Plaintiff alleged was taken against him, or that the other class members' experiences with law enforcement overall were sufficiently similar to Plaintiff's experience, such that Plaintiff's experience is "typical" of the other class members. Consequently, this Court should find the three additional charges Plaintiff faced apart from a violation of Section 9-64-150(b) of the MCC, Plaintiff's alleged Fourth Amendment violations in the form of an investigatory stop, a search, an arrest, and a prosecution without just cause, and Plaintiff's factually specific interactions with law enforcement are "facts [that] set [Plaintiff's] claim apart from those of the other putative class members." *McFields*, 982 F.3d at 518.

---

[5] Defendants attached the Certified Statements of Dispositions for Plaintiff's four charges as an exhibit to their Response to Plaintiff's Motion for Leave to Amend Complaint and explained why this Court may take judicial notice of these public state court records. Doc. 42 at p. 7 n.5.

Finally, the scant factual allegations in the AC about the other class members that might support a showing of typicality are not enough. Plaintiff's conclusory references to two other civil cases in which Plaintiff's counsel represents the plaintiffs further underscores how Plaintiff does not and cannot meet the typicality requirement of Rule 23(a)(3). *See* Doc. 46 at ¶ 37. In *Haley v. Tohatan*, No. 22-cv-01785, (N.D. Ill. 2022), the plaintiff alleged as follows: he was in his car stopped on the side of the street; CPD police officers pulled up and approached the plaintiff's vehicle; CPD police officers commanded the plaintiff to step out of his car after asking the plaintiff "whether he had a gun permit and/or weed on him," and "Plaintiff responded to the effect that he does not have a gun and does not have any weed"; and CPD police officers handcuffed the plaintiff and searched his vehicle. *See* Doc. 1, No. 22-cv-01785.

In *Robinson v. Crot*, No. 23-cv-14805 (N.D. Ill. 2023), the plaintiff alleged as follows: he was sitting in his car; CPD police officers approached the plaintiff and commanded the plaintiff to exit his car; CPD police officers handcuffed the plaintiff and searched the plaintiff's person; CPD police officers physically hurt the plaintiff's wrists and arms while the plaintiff was handcuffed; and CPD police officers searched the plaintiff's car and initiated multiple charges against the plaintiff. *See* Doc. 1, No. 23-cv-14805.

Thus, a basic reading of the *Haley* complaint and the *Robinson* complaint shows those incidents are quite dissimilar from the underlying incident here. Contrary to what Plaintiff alleges in the AC, neither the *Haley* complaint nor the *Robinson* complaint involves "other individuals who were similarly stopped, searched, arrested, and/or prosecuted for parking in no-parking zones, despite their vehicles being merely stopped or standing." Doc. 46 at ¶ 37 (citing to *Haley* and *Robinson*). (In fact, it is quite troubling to Defendants—and should be troubling to this Court as well—that Plaintiff makes a blatantly false allegation in Paragraph 37 of the AC with respect to

11

the substance of the *Haley* and *Robinson* complaints that were filed by Plaintiff's counsel.) And lastly, Plaintiff's reference to a spreadsheet showing "thousands" of instances "where a police officer initiated an investigatory stop, made an arrest, and/or issued a citation under MCC 9-64-150(b)," *id.* at ¶ 38, is vague on its face and unhelpful in demonstrating typicality because Section 9-64-150(b) can concern the prohibition of both standing or parking, but Plaintiff does not specify which violations the spreadsheet shows and Plaintiff's case only concerns Plaintiff lawfully standing, not unlawfully parking, in a no-parking zone, *id.* at ¶¶ 6–10.

For these reasons, this Court should hold Plaintiff's class action allegations in Count II cannot satisfy the requirement in Rule 23(a)(3).

## II. Plaintiff Class Allegations Cannot Satisfy Rule 23(b)(3) – Predominance.

Plaintiff also cannot meet Rule 23(b)(3)'s requirement that "questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). "The guiding principle behind predominance is whether the proposed class's claims arise from a common nucleus of operative facts and issues. This requires more than a tally of common questions; the district court must consider their relative importance." *Scott*, 99 F.4th at 1092 (cleaned up). In other words, "[t]his 'inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *McFields*, 982 F.3d at 518 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "Rule 23(b)(3) requires the common question(s) to predominate over the individual ones," and "to determine which issues are common, individual, and predominant, the court must circumscribe the claims and break them down into their constituent elements." *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 338–39 (7th Cir. 2023) (cleaned up).

Here, Plaintiff cannot meet Rule 23(b)(3)'s requirement for reasons similar to why Plaintiff cannot meet Rule 23(a)(3)'s requirement, and the City incorporates its Rule 23(a)(3) arguments here. *See McFields*, 982 F.3d at 519 ("The district court concluded that McFields failed to satisfy the predominance requirement because 'individual issues—the facts and circumstances of each individual detainee's claim—predominate.' We see no real need to analyze this issue given our conclusions that McFields failed to satisfy the requirements of Rule 23(a)(2) and (3)."). As explained above in discussing Rule 23(a)(3), there are individual issues of whether the class members (i) were charged with other violations under the MCC or under other law apart from Section 9-64-150(b) of the MCC, (ii) suffered Fourth Amendment violations like Plaintiff did and under similar facts in the form of an investigatory stop, a search, an arrest, and a prosecution by "establish[ing] the absence of probable cause as of the relevant point in time," Doc. 32 at 5 (citations omitted), and (iii) experienced the same set of law enforcement actions taken against them under similar facts as Plaintiff alleged was taken against him in his particular situation. Simply put, Plaintiff's class allegations do not plausibly show that any common issues surrounding Plaintiff's and the class members' interactions with law enforcement predominate over individual issues with respect to the individual circumstances under which each person had an interaction with law enforcement. Thus, the "individual issues predominate over common questions" involving the class members, which is "the opposite of what Rule 23(b)(3) requires." *See id.*

Moreover, as the Seventh Circuit has "explicitly instructed district courts to begin the class certification analysis [sic] by identifying the elements of the plaintiff's various claims," *Eddlemon*, 65 F.4th at 339 (cleaned up), this Court should find the individual questions raised by Plaintiff's Fourth Amendment claims as to his own experiences with the Officers and establishing the absence of probable cause at every relevant point in the interaction predominate over any common

13

questions generally applicable to the class members with respect to the class members' Fourth Amendment claims. *See id.* at 339–40 ("The [district] court should have identified the elements of Eddlemon's two claims and separately analyzed them to better understand the relationship between each claim's common and individual questions."). There are simply too many possibilities on the face of the AC as to how each class member could make out a Fourth Amendment claim and show the absence of probable cause. This proposed class action is not simply about whether class members were wrongly cited for violating Section 9-64-150(b) of the MCC. That would be difficult enough to prove on a class-wide basis because the Court would have to make an individual determination in each case. Fourth Amendment claims, and establishing the absence of probable cause, are far more fact-specific and have intensive individual questions.

The Court would have to hold individual trials for each class member to determine the merits of their Fourth Amendment claim by examining the details of each case, including reviewing the police officers' actions, the individual's actions, the duration of the encounter, and the overall context of the situation. There is little to no evidence that would apply to the class as a whole. The police officers will be different, the police officers' observations and conduct on the scene will be different, the plaintiffs will be different, the plaintiffs' conduct will be different, the charges will be different, and the witnesses' credibility will have to be assessed one-by-one. And even if the Court found the City liable to one class member, that would not necessarily prove the City is liable to any other class member. Thus, common issues do not predominate here, and a class action is not the superior method for adjudicating Plaintiff's *Monell* claim. *See Jones*, 2019 WL 3554374, at \*5–6 (granting motion to strike class allegations based on the plaintiff's failure to satisfy Rule 23(b)(3) because although some of the issues "appear to be relatively amenable to common resolution," issues surrounding multiple elements of the underlying claim were too

individualized and would "invariably predominate over common questions" to make the case amenable to collective resolution as a class action).

Ultimately, Plaintiff alleges in conclusory fashion "[e]ach member of the class was unlawfully stopped, searched, arrested, and/or prosecuted for parking in no-parking zones, despite their vehicles being merely stopped or standing," Doc. 46 at ¶ 53, without any showing how this common inquiry would pervade over the individualized inquiries inherent in each class member's Fourth Amendment claims and interactions with law enforcement.

For these reasons, this Court should hold Plaintiff's class action allegations in Count II cannot satisfy the requirement in Rule 23(b)(3).

## CONCLUSION

For the foregoing reasons, this Court should grant Defendant City of Chicago's Motion to Strike Plaintiff's Class Allegations in Amended Complaint, strike the class allegations from the AC, including from Count II, and grant any further relief the Court deems just and appropriate.

Dated: December 5, 2024						Respectfully Submitted,

								CITY OF CHICAGO

								By: */s/* Matthew H. Bunn
								       Matthew H. Bunn

Marion C. Moore, Chief Assistant Corporation Counsel
Matthew H. Bunn, Assistant Corporation Counsel
City of Chicago Department of Law
Federal Civil Rights Litigation Division
2 North LaSalle Street, Suite 420
Chicago, Illinois 60602
312-744-5170 (Moore)
312-744-0226 (Bunn)
Marion.Moore@cityofchicago.org
Matthew.Bunn@cityofchicago.org

*Counsel for Defendant City of Chicago*