IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RUSSELL D. McCULLOUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 23 C 15991 |
| | ) | |
| RICH L. RODRIGUEZ JR., VICTOR E. | ) | |
| GOETZ, and CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Russell McCullough was waiting at a curb in his vehicle when he was approached by two Chicago Police Department officers, searched, and arrested. In his first amended complaint, McCullough asserted claims on behalf of himself and a putative class against the two officers and the City of Chicago. McCullough now seeks leave to file a second amended complaint. The Court converted the defendants' objection into a motion for summary judgment on the individual claims in the proposed second amended complaint. For the reasons described below, the Court grants the defendants' motion for summary judgment on McCullough's individual claims and dismisses the remaining claims.

**Background**

As the Court previously explained, on August 1, 2023, McCullough was seated in the driver's seat of his vehicle with his hazard lights flashing. *See McCullough v. Rodriguez*, No. 23 C 15991, 2024 WL 3791629 (N.D. Ill. Aug. 13, 2024). He was

waiting at the curb and facing north near the intersection of Wabash and Grand Avenues in Chicago.  Several feet behind his vehicle was a sign prohibiting parking. Driving north on Wabash in their police vehicle, Officers Rodriguez and Goetz passed McCullough's vehicle, made a U-turn, and then performed a three-point turn, pulling up behind McCullough's vehicle and activating their emergency lights.  The officers believed that McCullough's vehicle was unoccupied and illegally parked in the no-parking zone.

Goetz approached McCullough's vehicle from the driver's side, and Rodriguez approached from the passenger side.  Both officers shined their flashlights into the vehicle because it had tinted windows that limited visibility into the car.  Goetz pointed down with his finger and asked McCullough to roll down the driver's side window, which he lowered a few inches.  Goetz told McCullough that he was parked in a tow zone, asked him again to lower the window, and then asked him to exit the vehicle, as Goetz could not see inside due to the tinted window.  For several minutes, both officers asked McCullough to step out of his vehicle; McCullough asked in return why he was being asked to step out and explained that he was waiting for a curbside pick-up.  Additional police officers arrived, and another officer, Theodoridis, joined Goetz.  He tapped the window with his ceramic flashlight and stated that if McCullough did not exit, he would smash the window with his flashlight and drag him out of the vehicle.

McCullough then rolled down his driver's side window.  Theodoridis reached inside and unlocked and opened the driver's side door.  Rodriguez approached the driver's side door and pulled McCullough out of the vehicle.  The officers searched the vehicle, handcuffed McCullough, and asked him to produce his driver's license.

Standing in the street, McCullough directed the officers to look in a bag in the car and, when the license was not found there, to look between the front seats, which yielded no license.  Rodriguez asked McCullough for his name, and he provided his correct last name.

McCullough was arrested, and his vehicle was towed and impounded.  He was charged with the following offenses: Municipal Code of Chicago § 9-64-150(b): Parking Prohibited – Standing/Parking Posted; Municipal Code of Chicago § 9-76-220(b): Vehicle Parked/Standing on Public Way w/Tinted Windows; 625 Ill. Comp. Stat. Ann. 5.0/11-203: Illinois Vehicle Code – Obedience to Police Officers; and 625 Ill. Comp. Stat. Ann. 5.06/6-112: Driver's License/Permit – Fail to Carry/Display.  McCullough was released from custody the same day.  He went to the impound lot to retrieve his vehicle and says that he found his driver's license between the seat and the center console, where he had told the officers it might be.  On or about November 3, 2023, the charges against McCullogh were dismissed after the officers failed to appear in court.

McCullough brought this suit shortly thereafter.  In February 2024, the defendants moved to dismiss.  The motion relied on bodyworn camera footage not included in the complaint.  The Court therefore converted the motion into a motion for summary judgment and, after full briefing, later denied summary judgment.  The Court concluded that a reasonable jury could find that the officers lacked probable cause to believe that McCullough had committed any of the four charged offenses.  The officers claimed that they had probable cause to believe that McCullough's vehicle was unlawfully parked in violation of Chicago Municipal Code § 9-64-150(b).  But the Code defines parking as the "standing of an *unoccupied* vehicle," Chi. Mun. Code § 9-4-10

(emphasis added), and a reasonable jury could find that the officers knew the vehicle was occupied when they stood adjacent to it.  Additionally, Chicago's tinted window ordinance, Municipal Code of Chicago § 9-76-220(b), had been repealed nine months before the encounter and could not provide probable cause.  And there was a genuine dispute regarding whether McCullough violated any lawful orders (that is, orders backed by probable cause or reasonable suspicion of a crime) under 625 Ill. Comp. Stat. Ann. 5.0/11-203.  Finally, the Court determined that a reasonable jury could find that the officers lacked probable cause to charge McCullough for failing to have his driver's license in his immediate possession, as they asked him to produce the license while he was already outside the vehicle, and McCullough presented evidence that while he was inside his vehicle, his license was in his immediate possession next to the driver's seat.

The Court then granted McCullough leave to file an amended complaint, in which he included claims on behalf of a class of drivers who allegedly suffered Fourth Amendment violations because the City failed to train officers on the distinction between parking and standing.  After the parties completed discovery, including depositions of McCullough, Goetz, and Rodriguez, McCullough sought leave to file a second amended complaint, and the defendants opposed the motion.  Because defendants' opposition relied on material outside the complaint, the Court exercised its discretion to convert the defendants' opposition into a motion for summary judgment and allowed McCullough to respond accordingly.  Although the defendants' February 2024 summary judgment motion cited only the charged offenses as sources of probable cause, the current motion cites other traffic offenses:  625 Ill. Comp. Stat. Ann. 5/12-503: Illinois Vehicle Code – Windshields Must be Unobstructed, and 625 Ill. Comp. Stat. Ann. 5/12-212:

4

Illinois Vehicle Code – Special Restrictions on Lamps.

## Discussion

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when, after drawing all reasonable inferences from the record in favor of the nonmoving party, a reasonable trier of fact could return a verdict for the nonmovant. *Id.*

The party seeking summary judgment bears the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the party that bears the ultimate burden at trial must identify "specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). If the party with the burden of proof cannot show that each essential element of its claim or defense is factually supported, summary judgment against that party is appropriate. *Celotex*, 477 U.S. at 323–24.

McCullough argues that his unreasonable seizure claim should survive summary judgment because the officers lacked reasonable suspicion for a seizure. "To state a claim under the Fourth Amendment, a plaintiff must show that a search or seizure occurred and that the search or seizure was unreasonable." *Hess v. Garcia*, 72 F.4th 753, 761 (7th Cir. 2023). With the exception of an investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968), "seizures are 'reasonable' only when they are based on

5

probable cause." *United States v. Eymann*, 962 F.3d 273, 282 (7th Cir. 2020) (quoting *Dunaway v. New York*, 442 U.S. 200, 213 (1979)).  Probable cause exists when "the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing . . . that the suspect has committed, is committing, or is about to commit an offense," even a minor or traffic offense.  *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017).  The "probable cause inquiry is an *objective* one," *Carmichael v. Village of Palatine*, 605 F.3d 451, 457 (7th Cir. 2010), and an "officer's state of mind (*except for the facts that he knows*) is irrelevant to the existence of probable cause."  *Id.* (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).  "When a police officer reasonably believes that a driver has committed even a minor traffic offense, probable cause supports the stop."  *United States v. Radford*, 39 F.4th 377, 384 (7th Cir. 2022).

To make a brief investigatory stop under *Terry v. Ohio*, an officer must have reasonable suspicion, which "requires more than a hunch but less than probable cause."  *United States v. Smith*, 32 F.4th 638, 641 (7th Cir. 2022) (quoting *United States v. Reedy*, 989 F.3d 548, 552 (7th Cir. 2021)) (internal quotation marks omitted).  Reasonable suspicion also exists when officers "reasonably believe they have witnessed a traffic violation . . . even if the violation is quite minor."  *Id.*

The Court assumes for purposes of discussion that McCullough was seized within the meaning of the Fourth Amendment when the officers pulled up behind his vehicle, activated their emergency lights, approached his vehicle, and ordered him to roll down his window.  But there is no genuine dispute that the officers had, at that point, probable cause (and, *a fortiori*, reasonable suspicion) for a violation of 625 Ill. Comp.

Stat. Ann. 5/12-503(a), which provides that a front windshield may be tinted no further than six inches from the top of the windshield. The statute also restricts the tinting of windows "immediately adjacent to each side of the driver"—i.e. the front driver's and passenger's windows—stating that these windows may be tinted so long as at least 30%, 35%, or 50% visual light transmittance (VLT) occurs, depending on the level of light transmittance in the windows to the rear of the driver. *Id.* 5/12-503(a-5). McCullough concedes that his vehicle violated both provisions of the statute. His front windshield tint extended eight inches from the top, and his side windows were tinted with VLT percentages between 17% and 24%, which ran afoul of even the lowest legal limit in section 12-503(a-5). Pl.'s Resp. to Mot. for Summ. J. at 4 n.1; *see* Defs.' Resp. to Mot. for Leave to Amend, Exs. 2–4.

Crucially, the officers observed the dark tint on the vehicle's windows prior to the stop; no reasonable jury could find otherwise. Officer Rodriguez testified several times during his deposition that he observed tinted windows while driving past the vehicle and before initiating the stop. Pl.'s Resp. to Mot. for Summ. J., Ex. 2, 22:23–22:25, 23:2–23:5, 31:2–31:8, 32:14–32:16. McCullough questions Officer Rodriguez's credibility, but there is no basis for that on the record before the Court.[1] A contemporaneously-

---

[1] The defendants should not take this to mean that the Court condones Officer Rodriguez's unprofessional behavior. Rodriguez's bodyworn camera footage reveals that, after McCullough was placed in handcuffs, Rodriguez referred to him as "bozo" and stated, "Fucking sick of this shit, social justice warriors, bro," and "Don't worry, this is a good experience, cuz now you know, when we ask you something, you fucking do it." Defs.' Reply, Ex. B., 8:37, 8:27, 10:02. It is no excuse that Rodriguez considered McCullough's behavior to be "really irritating and annoying." Pl.'s Resp., Ex. 2, 130:13–130:14. Rodriguez's comments are a far cry from his own characterization of his behavior as "very professional." *Id.*, 107:4.

prepared document—the arrest report—described "[h]eavy deep window tints making it very difficult to see inside the vehicle." *Id.*, Ex. 7 at 3. And although the encounter occurred during the day, both officers employed their flashlights to see into the vehicle, and each initially believed that it was unoccupied. *Id.*, Ex. 2, 44:11–16; *id.*, Ex. 1, 23:12–23:13. The bodyworn camera footage supports this testimony: it shows the officers using their flashlights, and the interior of the vehicle cannot be seen before the flashlights were deployed. Defs.' Reply., Ex. 3, 2:10; Ex. 4., 2:10.

McCullough contends that there is a genuine factual dispute regarding whether the officers had reasonable suspicion, as they did not state during the stop that his windows were unlawfully tinted and instead told him that they were confronting him because he was (allegedly) parked in a prohibited zone. But the probable cause or reasonable suspicion inquiry does not center on what an officer articulated as the basis for a stop or what offenses were ultimately charged. *See Carmichael*, 605 F.3d at 457; *Devenpeck*, 543 U.S. at 153–54 (rejecting lower court's rule that probable cause must be based "upon the offense actually invoked at the time of arrest" or a "closely related" offense). Rather, it turns on what the officer observed and whether those facts would lead a reasonable officer to believe that criminal activity was afoot or had occurred. *See Carmichael*, 605 F.3d at 457; *Devenpeck*, 543 U.S. at 153. A vehicle with windows tinted so darkly that officers believed it was unoccupied and employed flashlights in broad daylight to see inside would lead a reasonable officer to believe that the vehicle's windows violated the statutory window tinting prohibition; no reasonable jury could find otherwise.

There is also no genuine dispute that officers had probable cause for a seizure

based on McCullough's use of his vehicle's flashing hazard lights. Under Illinois law, use of hazard lights is "prohibited on motor vehicles except as expressly authorized in this Chapter or as a means for indicating a right or left turn, lane change, or maneuver of a vehicle from a direct course of travel as provided in Section 12-208 or the presence of a vehicular traffic hazard requiring unusual care." 625 Ill. Comp. Stat. Ann. 5/12-212(b). Both officers testified that they observed the flashing hazard lights before approaching the vehicle, Pl.'s Resp., Ex. 2, 22:25; Ex. 1, 20:22–20:24, 37:19, and the bodyworn camera footage documents that McCullough's hazard lights were flashing as the officers pulled up behind his vehicle and disembarked. Defs.' Reply, Ex. 3, 2:02–2:05; Ex. 4, 2:00–2:05. It is clear from the bodyworn camera footage and the officers' testimony that McCullough's vehicle did not meet the statute's requirements for use of hazards: the vehicle was not turning, changing lanes, or performing a maneuver. Rather, it was pulled over at the curb with no evidence of an emergency. No reasonable jury could find otherwise. The evidence is also clear that the officers observed these violations of the hazard lights law before initiating the alleged stop. *See* Pl.'s Resp., Ex. 2, 50:24-25, 51:10-51:17; Ex. 1, 30:20–30:24; 37:16–37:19. It is therefore undisputed that the officers had a proper legal basis to initiate a seizure.[2]

McCullough next asserts a claim of retaliatory prosecution, contending that the officers retaliated against him because he asked why he was stopped and asserted that

---

[2] Officers Goetz and Rodriguez also argue that they are entitled to qualified immunity because they made a reasonable mistake in concluding that McCullough's vehicle was unoccupied and therefore violated the no-parking ordinance, Municipal Code of Chicago § 9-64-150(b). The Court need not address this argument because it is sufficiently clear that the officers had reasonable suspicion, and indeed, probable cause, for the seizure for the reasons discussed.

he was not violating the law.  To sustain such a claim a plaintiff must establish that (1) he engaged in activity protected by the First Amendment; (2) he suffered criminal charges likely to deter future protected activity; (3) "the charges were motivated by retaliation;" and (4) there was "a lack of probable cause supporting the charge[s]." *Towne v. Donnelly*, 44 F.4th 666, 671 (7th Cir. 2022).  The Supreme Court explained in *Hartman v. Moore*, 547 U.S. 250 (2006), that "a plaintiff in a retaliatory-prosecution action must plead and show the absence of probable cause for pressing the underlying criminal charges." *Id.* at 257.  Because prosecutors have absolute immunity from suit for deciding to prosecute, this requirement ensures a "chain of causation from animus to injury," *id.* at 259, helping "bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action, and to address the presumption of prosecutorial regularity." *Id.* at 263.

McCullough contends that the officers retaliated against him because he asked why he was stopped and asserted that he was not violating the law.  He contends that the officers lacked probable cause for any of the charges filed against him.  But the Court concludes that there is no genuine dispute that probable cause existed for at least one of the charges that the officers initiated, for "willfully fail[ing] or refus[ing] to comply with any lawful order or direction of any police officer."  625 Ill. Comp. Stat. Ann. 5/11-203.  For about four minutes, McCullough failed to comply with orders to lower his window and exit his vehicle.  He lowered his window only a few inches and stayed put until officers opened his door and removed him from the vehicle.  This is confirmed by the body camera video.  The officers' orders were lawful because, as explained above, they had probable cause to believe that McCullough was in violation of Illinois statutes

governing window tinting and use of hazard lights. McCullough's refusal to comply with orders—a matter on which there is no genuine dispute—created probable cause for a violation of 625 Ill. Comp. Stat. Ann. 5/11-203.

*Hartman* did not involve multiple charges, and the Supreme Court and Seventh Circuit have not addressed whether a plaintiff alleging retaliatory prosecution in a multiple-charge case must show a lack of probable cause for every charge. *Cf. Chiaverini v. City of Napoleon*, 602 U.S. 556, 563 (2024) (holding that a plaintiff alleging *malicious* prosecution may proceed even if only one of several charges is unsupported by probable cause). But McCullough does not argue that his claim survives if there is even one offense for which probable cause was lacking. Rather, he argues that probable cause was lacking for all four charges, which is not the case.[3]

As for his remaining claims, McCullough expressly waives any argument against summary judgment on the false arrest and malicious prosecution claims. He also fails to present an argument against summary judgment on his unreasonable search claim, which he has therefore waived or forfeited. *See United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) (undeveloped constitutional arguments are waived). The defendants are therefore entitled to summary judgment on these claims. Additionally, given the absence of an underlying constitutional violation, the Court dismisses McCullough's claims against Chicago for wrongful detention and malicious prosecution

---

[3] The defendants suggest that they also prevail under *Devenpeck v. Alford*. Under *Devenpeck*, defendants contend, objective probable cause for any offense, charged or not, requires the Court to grant summary judgment in its favor on McCullough's retaliatory prosecution claim. But the Court does not apply *Devenpeck*, as it concerned probable cause for an arrest, not a retaliatory prosecution claim, and it was not cited in *Hartman*. *Devenpeck*, 543 U.S. at 151.

under *Monell*. *Haro v. Porter County*, 129 F.4th 992, 999 (7th Cir. 2025).

**Conclusion**

For the foregoing reasons, the Court grants Officer Rodrigeuz and Goetz's motion for summary judgment [dkt. no. 84] and also dismisses McCullough's *Monell* claims against the City of Chicago. The Court directs the Clerk to enter judgment stating: Judgment is entered in favor of the defendants and against the plaintiff. For the purpose of setting a schedule on the defendants' motions for sanctions, a telephonic status hearing is set for December 8, 2025 at 9:05 a.m., using call-in number 650-479-3207, access code 2305-916-8729.

                                        _____
                                        MATTHEW F. KENNELLY
                                        United States District Judge

Date:  December 3, 2025