IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RUSSELL D. MCCULLOUGH, ) | |
| ) | |
| Plaintiff, ) | Case No. 23-cv-15991 |
| ) | |
| v. ) | |
| ) | Honorable Matthew F. Kennelly |
| CITY OF CHICAGO, ) | |
| RICH L. RODRIGUEZ JR., and ) | |
| VICTOR E. GOETZ, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS FOR SANCTIONS UNDER FRCP 11(c)(2) and 37**

Plaintiff Russel D. McCullough, by and through one of his attorneys of record, Peter T. Sadelski, responds to Defendants' motions for sanctions under Federal Rules of Civil Procedure 11(c)(2) and 37, stating as follows:

Around August 8, 2023, Plaintiff Russell McCullough contacted Ed Fox & Associates, Ltd. and consulted Attorney Peter T. Sadelski regarding alleged constitutional violations by Defendants Rich L. Rodriguez Jr. and Victor E. Goetz. On August 8, 2023, Plaintiff came to the office and signed a retainer agreement. On November 15, 2023, Sadelski filed this lawsuit on behalf of Plaintiff. Either sometime before filing the lawsuit, or shortly thereafter, Sadelski asked Plaintiff whether he had any documents showing that the windows on his vehicle had a lawful amount of tint.

The facts in this paragraph are all according to Plaintiff. Upon Sadelski's request, he recalled receiving an invoice from the dealership. Plaintiff then searched

for and found the invoice. Plaintiff noticed that the invoice showed the window tint at 5%. Plaintiff knew this was incorrect because the window tints were not as dark as they would have been had they really been 5%. He also recalled asking the dealership to tint all windows to the same level as the tint on the rear window—believing that the factory tint was within a lawful percentage. Plaintiff contacted Corey Josephson, a dealership employee, and made an in-person appointment. He explained to Josephson that there was a mistake on the invoice—that the window tints were not 5%. Josephson then relayed that he could not print an invoice showing what he requested. Instead, Josephson took a pen, wrote the "3" in front of the "5," and returned it to Plaintiff. Plaintiff then sent the invoice to Sadelski.

The following is based on Sadelski's recollection. Upon receipt, Sadelski glanced at the invoice. Importantly, Sadelski did not notice that the "3" was superimposed. Sadelski saved it to the appropriate client folder and did not do anything with it until he prepared production in response to Defendants' discovery requests.

On or about May 9, 2025, Defendants' attorneys confronted Sadelski about what they claimed was a superimposed "3." Thereafter, Sadelski recalls looking at the invoice again and agreeing that the "3" looked superimposed. Sadelski, ready to inform Plaintiff that he would withdraw from the case if Plaintiff did not agree to dismiss the case, contacted Plaintiff and confronted him about the superimposed "3" on the invoice.

Plaintiff provided Sadelski with his version of the facts, as set forth above. Sadelski told Plaintiff he needed to provide proof that the window tints were within legal limits. Shortly thereafter, Plaintiff went to a tint shop, had an employee test the window tint, recorded the test, and sent the recording to Sadelski. The video shows that each side window was between 20% and 25%.

At some point, either before or after Sadelski confronted Plaintiff about the superimposed "3," Sadelski contacted the dealership and spoke to an individual named Corey Kazienko. Kazienko provided Sadelski with a document showing that the window tints on Plaintiff's vehicle were 20%. Giving Plaintiff the benefit of the doubt, Sadelski thought about whether, notwithstanding the fact that the "3" was superimposed and that the window tints were below the legal limit, Plaintiff had any viable claims against Defendants.

To be clear, Sadelski knew, and knew at all relevant times, that probable cause is an objective standard. But maintains that the objective standard is dependent on the subjective facts known to the officers at the time. See *White v. O'Leary*, 742 F. Supp. 990, 992 (N.D. Ill. 1990) citing *U.S. v. Hope*, 906 F.2d 254, 258 (7th Cir. 1990) ("probable cause is an objective one and the arresting officer's subjective reasons or motives are relevant, if at all, only in establishing what facts the officer actually knew of at the time of the arrest.").

Sadelski believed that there was a genuine dispute of material fact as to when Defendants actually noticed the tinted windows, which is the central outcome-determinative fact.

3

First, Goetz testified that he did not recall when he first noticed that McCullough's vehicle windows were tinted. Second, while Rodriguez claims that he noticed the tint before initiating the detention, his credibility is seriously questionable.

Rodriguez arguably perjured himself during his deposition. When asked whether he spoke to his attorneys during multiple breaks, he replied that he did not. Sadelski knew this was false because, although Rodriguez apparently believed the camera in the remote Zoom deposition was on, it was not, and Sadelski observed him speaking with his attorney. Rodriguez's attorneys attempted to cure this perjury on cross-examination.

Sadelski believed that, for the two reasons stated above, and for additional unstated reasons, Defendants did not perceive that there was either any window tint, or at a minimum excessive tint, at the time of the incident. He further believed that the real motive behind Defendants' charging Plaintiff with a repealed municipal code tint violation was to create a post hoc justification upon realizing that Plaintiff's vehicle was not actually parked, but standing, so their real reason was meritless.

Sadelski considered filing motions for sanctions against Rodriguez for the reasons stated above, and one of his attorneys for making speaking objections and coaching his client during the deposition. He ultimately decided against doing so to avoid the appearance of tit for tat.

The Court should deny the motion for sanctions under Federal Rule of Civil Procedure 37 because Plaintiff maintains that everything he stated in his deposition

4

was accurate. Specifically, Plaintiff maintains that Corey Josephson superimposed the "3" and that, until the window tint was tested as described by Defendants, he believed the tint was 35%.

As for the motion for sanctions under Federal Rule of Civil Procedure 11(c)(2), the Court should deny it because Sadelski did not file any documents to delay or needlessly increase the cost of litigation. The claims were supported by existing law, and there was evidence that Defendants were not credible, requiring a jury to determine who was telling the truth.

Sadelski further requests that, should the Court decide to grant the motion for sanctions under Rule 11(c)(2) and award Defendants their costs for drafting the motion, it order Peter T. Sadelski of Sadelski Law, PLLC, not Edward M. Fox of Ed Fox & Associates, Ltd., to pay any such costs, as Attorney Edward M. Fox had little to no involvement in this case.

Dated: January 30, 2026

        Respectfully submitted,

        */s/ Peter T. Sadelski*
        Peter T. Sadelski
        Sadelski Law, PLLC
        1 North State Street, Suite 1506
        Chicago, Illinois 60602
        (312) 625-6564
        peter.sadelski@sadelskilaw.com
        *Attorney for Plaintiff*