IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RUSSELL D. McCULLOUGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 23 C 15991 |
| ) | |
| RICH L. RODRIGUEZ JR., VICTOR E. ) | |
| GOETZ, and CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Russell McCullough was waiting at a curb in his vehicle when he was approached by two Chicago Police Department officers, searched, and arrested. In his proposed second amended complaint, McCullough asserted several Fourth Amendment and retaliatory prosecution claims against the two officers, as well as a claim against the City of Chicago. The Court converted the defendants' objection to McCullough's motion for leave to file a second amended complaint into a motion for summary judgment and, after briefing, granted the motion.

Following the entry of judgment, the defendants filed a motion for sanctions under Federal Rule of Civil Procedure 37 concerning an altered document produced by McCullough in discovery. They also filed a motion for sanctions under Federal Rule of Civil Procedure 11 asserting that McCullough's claims were frivolous. For the reasons stated below, the Court grants the defendants' Rule 37 motion and awards the defendants attorney's fees for the motion and discovery resulting from McCullough's

sanctionable conduct. The Court denies the defendants' Rule 11 motion. The defendants have also filed a bill of costs. The Court reduces the requested costs by $240 and taxes McCullough $2,746.50.

## Background

This case stems from an incident in August 2023. McCullough was pulled over to the side of a street and was seated in the driver's seat of his vehicle with his hazard lights flashing. Several feet behind his vehicle was a sign stating that parking was prohibited. Chicago police officers Richard Rodriguez and Victor Goetz pulled up behind McCullough's vehicle and activated their emergency lights. The officers believed that McCullough's vehicle was unoccupied and illegally parked in the no-parking zone.

The ensuing interaction is described in detail in this Court's previous opinions. *See McCullough v. Rodriguez*, No. 23 C 15991, 2024 WL 3791629 (N.D. Ill. Aug. 13, 2024); *McCullough v. Rodriguez*, No. 23 C 15991, 2025 WL 3470586 (N.D. Ill. Dec. 3, 2025). In brief, the officers approached McCullough's vehicle and shined their flashlights into the vehicle, which had tinted windows. The officers repeatedly asked McCullough to roll down his windows and exit his vehicle. McCullough refused. Additional police officers arrived. After an officer threatened to break McCullough's window and drag him out of the vehicle, McCullough rolled down his driver's side window. Rodriguez pulled McCullough out of the vehicle.

McCullough was arrested and charged with the following offenses: Municipal Code of Chicago § 9-64-150(b): Parking Prohibited – Standing/Parking Posted; Municipal Code of Chicago § 9-76-220(b): Vehicle Parked/Standing on Public Way w/Tinted Windows; 625 Ill. Comp. Stat. Ann. 5.0/11-203: Illinois Vehicle Code –

2

Obedience to Police Officers; and 625 Ill. Comp. Stat. Ann. 5.06/6-112: Driver's License/Permit – Fail to Carry/Display. In November 2023, the charges were dismissed after the officers failed to appear in court.

McCullough filed this suit shortly thereafter. In February 2024, the defendants moved to dismiss. The motion relied on bodyworn camera footage not included in the complaint. The Court converted the motion into a motion for summary judgment and, after full briefing, denied summary judgment. The Court held that a reasonable jury could find that the officers lacked probable cause to believe that McCullough had committed any of the four charged offenses. Among other things, the Court held that Chicago's tinted window ordinance, Municipal Code of Chicago § 9-76-220(b), which had been repealed nine months before the encounter, could not provide probable cause.

The Court granted McCullough leave to file an amended complaint, in which he included claims on behalf of a class of drivers who allegedly suffered Fourth Amendment violations because the City failed to train officers on the distinction between parking and standing. Meanwhile, the parties completed discovery. McCullough produced a receipt from Zeigler Auto Group that read: "Customer request all windows (except windshield) @ 35%". Defs.' Rule 37 Mot. at 2; *id.*, Ex. B. Visual light transmittance (VLT) refers to the percentage of light that can pass through glass. A window with a lower VLT percentage is more darkly tinted, and a window with a higher VLT percentage is more transparent. A state statute, 625 Ill. Comp. Stat. Ann. 5/12-503(a), restricts the tinting of windows "immediately adjacent to each side of the driver"—i.e. the front driver's and passenger's windows—stating that these windows

may be tinted so long as at least 30%, 35%, or 50% VLT occurs, depending on the level of light transmittance in the windows to the rear of the driver. *Id.* at 5/12-503(a-5).

When the defendants' counsel examined the invoice produced by McCullough, they noticed that the "3" in "35%" was "not consistent with the typed font of the rest of the invoice" and requested an invoice directly from Zeigler Auto Group. Ziegler produced an invoice that showed a request for 5% VLT, not 35%. Defs.' Rule 37 Mot. at 2; *id.*, Ex. B. Defendants' counsel notified one of McCullough's lawyers, Peter Sadelski, that the receipt produced in discovery had been modified, which McCullough conceded. McCullough later explained that, while searching for documents to produce in discovery, he found an invoice reflecting a 5% VLT treatment, which he believed to be inaccurate. McCullough said that he asked Corey Josephson, then an employee of Zeigler, to modify the receipt to reflect an accurate VLT percentage, and Josephson wrote the "3" before the printed 5%. McCullough later testified during his deposition that he was told by Josephson and others that his vehicle was tinted at 35% VLT. Defs.' Resp. to Mot. for Leave to File 2d Am. Compl., Ex. 5, McCullough Dep., 17:11–17. McCullough also testified that Josephson altered the invoice to place a "3" before the 5% after McCullough told him that the percentage was inaccurate. *Id.* at 21:1–2, 19–20. McCullough later swore in a declaration that his statements during his deposition were true and correct.

Josephson, however, submitted a sworn declaration in which he stated that McCullough had requested window tinting on his vehicle at 5% VLT, and Josephson advised him that this was illegal. Josephson Decl. ¶¶ 8–11. Josephson swore that McCullough never asked him to alter the invoice, he never modified the invoice, and he

4

was not aware of who did so. *Id.* ¶¶ 20–21.

At some point after the suit was filed, McCullough had his window tint measured by a third-party shop, and the tints were between 17 and 24% VLT. *See McCullough*, 2025 WL 3470586, at *3. Sadelski also obtained an invoice from Zeigler showing that the shop that performed the tinting, Tint To U, applied a 20% VLT film on the front windows. *See* Defs.' Mot. for Rule 11 Sanctions, Ex. 6. The Court notes that all these tint percentages—17%, 20%, and 24%—would be noncompliant with state law.

Based on the facts just described, in July 2025, the defendants filed a motion for sanctions under Federal Rule of Civil Procedure 37. The defendants also filed a motion for sanctions under Federal Rule of Civil Procedure 11(c), arguing that because McCullough's counsel knew that the officers had probable cause for the seizure based on the unlawful tint on the McCullough's vehicle, McCullough's claims were frivolous.

In July 2025, McCullough also sought leave to file a second amended complaint, and the defendants opposed the motion. The Court exercised its discretion to convert the defendants' opposition into a motion for summary judgment. The defendants cited traffic offenses with which McCullough had not been charged as sources of probable cause: 625 Ill. Comp. Stat. Ann. 5/12-503: Illinois Vehicle Code – Windshields Must be Unobstructed, and 625 Ill. Comp. Stat. Ann. 5/12-212: Illinois Vehicle Code – Special Restrictions on Lamps. In addition to the restrictions on tinting of side windows described earlier, 625 Ill. Comp. Stat. Ann. 5/12-503(a) provides that a front windshield may be tinted no further than six inches from the top of the windshield. McCullough conceded that his vehicle violated both provisions of the statute.

The Court granted summary judgment in favor of the defendants. Drawing on

5

the officers' deposition testimony, bodyworn camera footage, and the fact that the officers employed their flashlights to see into the interior of McCullough's vehicle in broad daylight, the Court concluded that a reasonable jury would have to find that the officers observed the dark tint on the vehicle's windows prior to the stop. Additionally, the officers had a separate source of probable cause. Both testified that, prior to the stop, they observed McCullough's use of his vehicle's flashing hazard lights in violation of 625 Ill. Comp. Stat. Ann. 5/12-212(b) (prohibiting use of hazard lights except under specified circumstances such as "a vehicular traffic hazard requiring unusual care"). Both offenses provided the officers with an objective basis for the stop, even though these offenses were not charged. See *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

After the Court entered judgment for the defendants, they filed a bill of costs.

## Discussion

**A.  Rule 37 motion**

The defendants argue that McCullough violated Rule 37 of the Federal Rules of Civil Procedure in two ways. First, they contend that he presented the altered Zeigler Auto Parts invoice to his counsel for production in discovery without disclosing the alteration. Second, they contend that he committed perjury during his deposition by claiming that Corey Josephson altered the document, which Josephson denied in a sworn declaration. The defendants originally sought dismissal of McCullough's claims on this basis. Now that the Court has entered judgment in the defendants' favor, they seek attorney's fees from McCullough as a sanction.

Rule 37 permits a court to impose sanctions based on a party's non-compliance with discovery orders. Fed. R. Civ. P. 37(b)(2)(A). The Seventh Circuit "broadly

construe[s] what constitutes a court order for purposes of imposing sanctions under Rule 37." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 775 n.3 (7th Cir. 2016). "We have construed the sanctioning power conveyed by Rule 37 to extend to instances of a party hiding evidence and lying in his deposition." *Id.* at 776. Several factors guide Rule 37 determinations: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 417 (7th Cir. 2019) (quoting *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012)).

Additionally, a court may impose sanctions under its inherent authority when "premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." *Ramirez*, 845 F.3d at 776. Sanctions based on Rule 37 or the Court's inherent authority require the Cour to make such a finding by at least a preponderance of the evidence. *Id.* at 778. "[P]roof by a preponderance of the evidence means that the 'trier of fact must believe that it is more likely than not that the evidence establishes the proposition in question.'" *In re Meyers*, 616 F.3d 626, 631 (7th Cir. 2010) (quoting *Am. Grain Trimmers, Inc. v. Off. of Workers' Comp. Programs*, 181 F.3d 810, 817 (7th Cir. 1999)). Sanctions under Rule 37 do not require a showing of intent but do require "a degree of culpability that exceeds simple inadvertence or mistake." *Ramirez*, 845 F.3d at 776.

First, the defendants argue that McCullough violated Rule 37 by giving Sadelski (who then produced to the defendants) an altered invoice from Zeigler Auto Group to reflect a window treatment of 35% VLT, consistent with Illinois law, rather than 5% VLT,

7

which violates Illinois law.  McCullough concedes that he gave Sadelski an altered document, but he says that Corey Josephson of Zeigler Auto modified the invoice because McCullough complained that he had not received a window treatment of 5% VLT.  The dispute pits McCullough's word against Josephson's:  Josephson swears that he did not alter the invoice, while McCullough testified during his deposition that Josephson made the alteration and swears that his deposition was true and accurate.

      Litigants are presumed "to understand that fabricating evidence and committing perjury is conduct of the sort that is absolutely unacceptable."  *JFB Hart Coatings, Inc. v. AM Gen. LLC*, 764 F. Supp. 2d 974, 981–82 (N.D. Ill. 2011) (quoting *REP MCR Realty, L.L.C. v. Lynch*, 363 F. Supp. 2d 984, 998 (N.D. Ill. 2005)).  "Our entire civil justice system is dependent on accurate and truthful discovery," and its "importance . . . cannot be overstated."  *REP MCR Realty*, 363 F. Supp. 2d at 1011 (quoting *Quela v. Payco–General Am. Creditas, Inc.,* No. 99 C 1904, 2000 WL 656681, at *7 (N.D. Ill. May 18, 2000)).  In addition, "a client has a duty to be honest with its counsel and to affirmatively notify its counsel to correct mistakes, misrepresentations, and misapprehensions."  *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 943 (N.D. Ill. 2021).

      McCullough submitted an altered invoice to Sadelski without explaining that the invoice had been modified.  That corrupted the discovery record, because as the parties now know, McCullough's windows were not tinted at 35% VLT.  Even if it was Josephson who altered the invoice, McCullough should have disclosed the alteration to Sadelski because it related to a significant fact in the case.  Had the defendants not noticed the alteration and investigated further, the parties would have assumed that

8

McCullough's vehicle was tinted at the legal limit, precluding the defendants from arguing that they had probable cause to stop McCullough based on unlawfully tinted windows.  This was one of the defendants' two ultimately successful arguments at summary judgment.  Although, as things turned out, McCullough's behavior may not have changed the outcome of the case, he violated the Court's discovery orders—broadly understood under the Seventh Circuit's interpretation of Rule 37—and acted with "extraordinarily poor judgment" rather than "mere 'mistake or carelessness.'" *Ramirez*, 845 F.3d at 776 (quoting *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992)).  McCullough also willfully abused the judicial process, warranting a sanction under the Court's inherent authority.  McCullough's conduct cannot be characterized as a mistake when he concedes that he went to Zeigler to seek an alteration of the invoice after his counsel asked him to provide documents to produce in discovery.  And McCullough's failure to tell Sadelski likewise was not a simple mistake, given the proximity between when McCullough procured the alteration and when he gave the altered document to Sadelski, as well as the fact that McCullough did not own up to the alteration until he was called on it by defendants' counsel.  In short, McCullough acted deliberately with respect to the alteration and its concealment.

Next, defendants contend that McCullough committed perjury by testifying at his deposition that Josephson altered the invoice, which Josephson denies.  *See* Josephson Decl. ¶ 20.  Perjury is "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Montano v. City of Chicago*, 535 F.3d 558, 564 (7th Cir. 2008) (quoting *United States v. Dunnigan,* 507 U.S. 87, 94 (1993)).  And a deposition, of course, is

testimony under oath. See Z*eigler Coal Co. v. Dir., Off. of Workers' Comp. Progs.*, 326 F.3d 894, 901 n.7 (7th Cir. 2003). McCullough's statement concerns a material matter, namely, whether and to what extent McCullough's vehicle violated Illinois's window tinting law. That fact, in turn, bears on whether the officers had probable cause to stop McCullough, the legal determination at the heart of his claims.

It is more likely than not that McCullough's testimony that Josephson altered the invoice was false. First, the Court notes that McCullough's attorney obtained an invoice printed by the shop that actually performed the tinting on Zeigler's behalf, Tint To U, reflecting a 20% VLT on the front windows. See Defs.' Mot. for Rule 11 Sanctions, Ex. 6. Given that Zeigler likely had access to this invoice to verify the level of tint applied and that VLT percentages are easily measured with an inexpensive tint meter, it is unlikely that Josephson would have modified the invoice to inaccurately state 35% VLT. Second, McCullough had a direct interest in having the receipt show a tint level compliant with Illinois law. Third, McCullough has offered no reason why Josephson would falsely state that he did not alter the invoice. It is, of course, conceivable that some other Ziegler employee (such as Corey Kazienko, who shares Josephson's first name) made the alteration, but if so, it would be in McCullough's interest to identify that person, which he has not done. Nor did McCullough take the deposition of Josephson, which the defendants suggested, to try to establish a motive for supposedly falsely claiming that he did not alter the invoice.

Significantly, McCullough's credibility is lacking. He testified during his deposition that he had never previously been ticketed for violating Illinois window tint laws. *See* McCullough Dep., 34:5–8. But the defendants presented evidence of McCullough's two

10

prior offenses related to window tinting on another vehicle. *See* Defs.' Mot. for Rule 37 Sanctions, Exs. E and F. This false testimony directly covers the subject of window tinting, and McCullough's earlier offenses suggest an even greater motive to provide false evidence now to cover up his current violation. In sum, the Court finds by a preponderance of the evidence that McCullough's testimony regarding the alteration of the invoice was false, and knowingly so, as he stood to benefit from providing evidence showing a legal level of tint and from concealing that he had done so.

The defendants request as a remedy the attorney's fees incurred to prepare the Rule 37 motion and to expand discovery to investigate the altered invoice. The Court finds that this is an appropriate remedy.

**B.    Rule 11 motion**

The defendants have also moved for sanctions against Sadelski, one of McCullough's attorneys, under Rule 11(c), 28 U.S.C. § 1927, and the Court's inherent authority.

Rule 11 of the Federal Rules of Civil Procedure provides that by filing a document, an attorney certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the filing has an adequate foundation in fact and law, and "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b). Rule 11 prohibits both "frivolousness on the objective side" and "bad faith on the subjective side." *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 583 (7th Cir. 2019) (quoting *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 930 (7th Cir. 1989)).

11

Rule 11(c) states that "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation[,]" and a court may also impose "reasonable expenses, including attorney's fees[.]" Fed. R. Civ. P. 11(c)(1)-(2). "Rule 11 sanctions—monetary or other penalties assessed against attorneys who violate these requirements—are designed to deter baseless filings, like those presented for an improper purpose." *Mazurek v. Metalcraft of Mayville, Inc.*, 110 F.4th 938, 942 (7th Cir. 2024). "But because sanctions can harm the reputation of attorneys and chill the creativity of counsel, care must be taken in their issuance." *Id.* Any sanction "must be proportionate to the circumstances." *Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019).

Additionally, 28 U.S.C. § 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" may be required to pay "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Seventh Circuit "precedent defines 'vexatiously' as either 'subjective or objective bad faith.'" *Vega v. Chi. Bd. of Educ.*, 109 F.4th 948, 956 (7th Cir. 2024) (quoting *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 1992)).

Finally, a court has inherent authority to impose sanctions for litigation misconduct that involves "bad faith, [is] designed to obstruct the judicial process, or [is] a violation of a court order." *REXA, Inc. v. Chester*, 42 F.4th 652, 671 (7th Cir. 2022) (quoting *Fuery v. City of Chicago*, 900 F.3d 450, 463–64 (7th Cir. 2018)).

The defendants argue that McCullough's case was frivolous, and his counsel knew that it was frivolous, once discovery revealed that McCullough's front windshield and side windows were illegally tinted, a fact that McCullough ultimately did not contest.

*See* 625 Ill. Comp. Stat. Ann. 5/12-503. McCullough was not charged under the Illinois window tinting statute, but probable cause is an objective standard and may be shown based on offenses that were not charged. *See generally Devenpeck*, 543 U.S. at 153. The defendants contend that because the officers had probable cause for a stop, McCullough's claims, which were based on a lack of probable cause, were meritless. The defendants also assert in their reply that McCullough has waived any response to this motion (or the Rule 37 motion). The Court disagrees. Although McCullough's combined response was brief, it substantively addressed both motions.

The defendants' legal argument prevailed at summary judgment: the Court concluded that the officers had probable cause to stop McCullough based on the unlawful tint of his windows and his unlawful use of hazard lights, even though he was not charged under the Illinois window tinting or hazard light statutes. But although McCullough's claims lacked merit, that does not mean that Sadelski's pursuit of the claims was sanctionable. "[T]he standard for a grant of summary judgment—when there is no genuine issue of material fact—is distinctly different from that for Rule 11 sanctions." *Mazurek*, 110 F.4th at 946 (citation omitted). Litigants should not "emphasize the merits of a party's position" over the Rule 11 standard. *Int'l Union of Operating Eng'rs, Loc. 150, AFL-CIO v. Nat'l Lab. Rels. Bd.*, 109 F.4th 905, 924 (7th Cir. 2024) (quoting Fed. R. Civ. P. 11(b) advisory committee's note to 1993 amendment).

McCullough's legal argument was unsuccessful, but his case was not frivolous. As the Court explained in its summary judgment opinion, the "probable cause inquiry is an *objective* one," *Carmichael v. Village of Palatine*, 605 F.3d 451, 457 (7th Cir. 2010),

13

and an "officer's state of mind (*except for the facts that he knows*) is irrelevant to the existence of probable cause." *Id.* (quoting *Devenpeck*, 543 U.S. at 153). The parenthetical language is crucial here: an officer's knowledge bears on whether the officer had probable cause. Sadelski "believed that there was a genuine dispute of material fact as to when Defendants actually noticed the tinted windows, which is the central outcome-determinative fact." Pl.'s Resp. to Mot. for Sanctions at 3. Sadelski points out that Officer Goetz could not recall when he noticed the window tint on McCullough's vehicle and that Officer Rodriguez, who claimed he noticed the tint before initiating the stop, had credibility issues because (Sadelski alleges) he gave false testimony during his deposition. The Court noted its similar concerns about Rodriguez after reviewing bodyworn camera footage of the stop. *See McCullough*, 2025 WL 3470586, at *4 n.1 (describing how Rodriguez swore and referred to McCullough as a "bozo" during the stop but testified during his deposition that his conduct was "very professional").

      The Court ultimately determined that no reasonable jury could find other than that the officers observed the tint on McCullough's vehicle prior to the stop, as his windows were so darkly tinted that the officers employed flashlights to see inside the car during the day. *Id.* at *4. But this does not mean that an argument on McCullough's behalf was frivolous or baseless. It was reasonable for Sadelski to contend, based on the evidence, that the officers had not noticed violations of the window tint statute prior to the stop and thus that McCullough was entitled to a trial.

      Rule 11 sanctions are inappropriate in the absence of subjective or objective bad faith by Sadelski. For the same reasons, sanctions are not warranted under 28 U.S.C.

§ 1927 or the Court's inherent authority, which are governed by substantially similar standards. See *Vega*, 109 F.4th at 956; *REXA, Inc.*, 42 F.4th at 671.

**C.     Bill of costs**

"Unless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "There is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Lange v. City of Oconto*, 28 F.4th 825, 845 (7th Cir. 2022) (quoting *Richardson v. Chi. Transit Auth.*, 926 F.3d 881, 893 (7th Cir. 2019)).

The defendants seek to recover costs in the amount of $2,986.50. McCullough was afforded an opportunity to respond to the bill of costs but did not do so. The Court must still assess "two questions when reviewing an award of costs: '(1) whether the cost imposed on the losing party is recoverable and (2) if so, whether the amount assessed for that item was reasonable.'" *Lane v. Person*, 40 F.4th 813, 815 (7th Cir. 2022) (quoting *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000)). To be recoverable, an expense must fall into one of the categories of costs specified by 28 U.S.C. § 1920. See *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987). "Any party seeking an award of costs carries the burden of showing that the requested costs were necessarily incurred and reasonable." *Trs. of Chi. Plastering Inst. Pension Tr. v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009).

The defendants categorize the requested costs as "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." Dkt. 97. That is a recoverable category of costs under 28 U.S.C. § 1920(2).

The defendants present an itemization and receipts for two transcripts from the Court's official court reporter and costs associated with the depositions of McCullough, Rodriguez, and Goetz: transcript fees, court reporter attendance or web appearance fees, and exhibit fees. *See* dkt. 97-1 and 97-2.

Under Local Rule 54.1(b), the recoverable costs of transcription "shall not exceed the regular copy rate as established by the Judicial Conference of the United States and in effect at the time the transcript or deposition was filed." N.D. Ill. L.R. 54.1(b). The requested recovery per transcript page is $4.40, which is the rate set by the Court's rules for 30-day transcripts in fiscal year 2025. *See* N.D. Ill. General Order 23-0015 (May 19, 2023) (establishing transcript rates for all transcripts requested after October 1, 2023). The requested transcript costs totaling $2,415.60 ($4.40 per page for 549 pages) are reasonable.

A prevailing party may also recover a court reporter's deposition appearance fees. *See* L.R. 54.1(b); *Held v. Held*, 137 F.3d 998, 1002 (7th Cir. 1998). As with fees for transcription, "the fees shall not exceed the published rates on the Court website unless another rate was previously provided by order of court." N.D. Ill. L.R. 54.1(b). In this Court, "the court reporter attendance fee shall not exceed $110 for one half day (4 hours or less), and $220 for a full day attendance fee." Judicial Conference Policy Regarding the Availability of Transcripts of Court Proceedings, U.S. District Court Northern District of Illinois, at 3; *see Overwell Harvest Ltd. v. Widerhorn*, No. 17 C 6086, 2023 WL 7196054, at *2 (N.D. Ill. Sept. 12, 2023). The defendants request $87.50 per hour for the four hours of McCullough's deposition ($350 total) and $100 each for Goetz and Rodriguez's depositions. The Court adjusts the attendance fee for McCullough's

16

deposition to a total of $110 for one half day, as dictated by the Local Rules.  The defendants are thus entitled to appearance fees of $310, not $550.

A prevailing party may also recover costs for deposition exhibits.  *GC2 Inc. v. Int'l Game Tech.*, No. 16 C 8794, 2019 WL 3410223, at *5 (N.D. Ill. July 29, 2019) (Kennelly, J.). "Courts in this district have found costs associated with deposition exhibits taxable on the ground that exhibits are essential to understanding the content of a deposition[.]"  *Springer v. Ethicon, Inc.*, 2018 WL 1453553, at *14 (N.D. Ill. 2018) (Kennelly, J.) (quotation marks omitted).  The modest, unopposed cost of $20.90 associated with the limited deposition exhibits here is reasonable.

## Conclusion

For the foregoing reasons, the Court grants the defendants' Rule 37 motion [dkt. 81] and denies the defendants' Rule 11 motion [dkt. 82].  The Court approves in part the defendants' bill of costs [dkt. 97] with a reduction of $240.  McCullough is taxed costs in the amount of $2,746.50.  By March 13, 2026, the defendants must submit a statement of their attorney's fees and expenses incurred for the Rule 37 motion and the discovery conducted to investigate the sanctioned conduct.  McCullough will have until March 23, 2026 to respond.  A telephonic status hearing is set for March 31, 2026 at 9:10 a.m., using call-in number 650-479-3207, access code 2305-915-8729.

```
                                    _____
                                          MATTHEW F. KENNELLY
                                          United States District Judge
```

Date:  March 2, 2026